IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:10-CR-320** |
| | : | |
| | : | **(Judge Rambo)** |
| v. | : | |
| | : | **(Magistrate Judge Smyser)** |
| | : | |
| **STEPHEN M. ULRICH** | : | |

# M E M O R A N D U M

## I.    Introduction

Before the court is an appeal by the defendant, Stephen M. Ulrich, from the judgment of conviction by a magistrate judge which found Ulrich guilty of disorderly conduct in violation of 18 U.S.C. § 13 and 18 Pa. Cons. Stat. § 5503(a)(1). The magistrate judge sentenced Ulrich to 90 days probation, restitution in the amount of $2,731.00 and a special assessment of $100.00. This court has jurisdiction to hear the appeal pursuant to Title 18 U.S.C. § 3402.

## II.    Standard of Review

"In reviewing a conviction by a magistrate judge, a district court considers 'whether a rational trier of fact could conclude beyond a reasonable doubt that the defendant[] [was] guilty.' " *United States v. Klose*, 552 F. Supp. 982, 984 (E.D. Pa. 1982) (citing *United States v. McQuilkin*, 673 F.2d 681, 687 (3d Cir. 1982). The evidence must be viewed in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**III.** **Definition of Disorderly Conduct**

Ulrich was charged with a summary offense of disorderly conduct. 18 Pa. Cons. Stat. § 5503(a)(1) provides as follows:

>   (a) OFFENSE DEFINED. – A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>>
>> (2) makes unreasonable noise;
>>
>> (3) uses obscene language, or makes an obscene gesture; or
>>
>> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
>
> .   .   .
>
>   (c) DEFINITION. – As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

**IV.** **Facts**

On June 13, 2009, Mr. Ulrich went to the New Buffalo Post Office to retrieve his mail. Previously that week, Ulrich's daughter went to the Post Office to retrieve the mail but was denied delivery at the post office counter (Trial Transcript at p. 47.) The Ulrichs had a post office box and had previously been handed their mail over the counter. This was against post office regulations. The post office began to enforce this regulation and had posted notices of the same throughout the post office. (*Id.* at p. 12.)

Earlier on June 13, 2009, Mrs. Ulrich went to the post office and requested her mail over the counter. She was denied the same and Post Office Employee Bonsall explained to her that handing box mail over the counter was contrary to posted regulations. (*Id.* at p. 13.) Shortly thereafter, defendant Ulrich entered the post office. He became loud and started pounding on the counter demanding his mail and threatened to come over the counter. He, in fact, came over the counter hitting Bonsall on the head, knocking over pens and other objects on the counter. In the process of hitting Bonsall, her glasses were knocked off. (*Id*. at p. 14.)

Bonsall testified that she got emotional to the point of being hysterical (*Id*. at pp. 14-15.) This incident disrupted her ability to do her job that day and the next couple of days and was afraid to go back to the post office. (*Id.*)

Ralph Halter, former post master and now retired, was in the post office at the time of the incident. Mr Halter testified that Ulrich was very loud and was pounding on the counter demanding his mail. He testified that Ulrich was threatening to jump over the counter. (*Id*. at p. 28.) Halter advised Ulrich that such action would cause him to regret it. (*Id.* at p. 29.) Ulrich responded, "I know." Ulrich then jumped over the counter, knocked Bonsall out of the way, her glasses went flying up in the air. Halter testified that the pen and pencil container on the counter erupted like a volcano (*id.*) and that the mark left on Bonsall's head was "like a half dollar or bigger." (*Id*. at p. 34.)

In the aftermath of this episode, the postal service management advised Bonsall to go to a hospital and be examined by health care professionals. That resulted in a medical bill of $2,731.00 which the magistrate judge assessed against Ulrich as restitution.

### V.     **Discussion**

Ulrich argues that his actions do not amount to disorderly conduct. He further argues that the award of restitution in the amount of $2,731.00 was inappropriate in light of the fact that the government failed to establish that Bonsall suffered any bodily injury and that her medical treatment was necessary.

The facts cited above were sufficient to find Ulrich guilty beyond a reasonable doubt. Ulrich was in a public place (i.e. a United States Post Office), and members of the public were present. His raised voice threatening to jump over a counter, along with pounding his fist on the counter, could be found to be an intent to cause public inconvenience, annoyance, or alarm; or recklessly creating a risk thereof. His behavior amounted to threats. His jumping over a counter was intentional – he had no right to be there. His striking of Mrs. Bonsall perhaps was not intentional but his actions could be described as a deliberate intent to accomplish getting his mail despite the consequences of his action. When warned that such action would be risky, he admitted that he knew the risk. His actions served no legitimate purpose.

Ulrich knew prior to June 3, 2009, that getting his mail over the counter was no longer viable as his daughter was denied access earlier that week on Monday or Tuesday. He knew he could get his mail from his box with a key which could be replaced by paying a nominal fee. A rational trier of fact could conclude that Defendant's behavior constituted disorderly conduct.

Ulrich argues that the post office administrators' decision to have Mrs. Bonsall get a medical evaluation was irrational and that he should not be made to pay these bills as restitution. Bonsall had a red mark the size of a half dollar or larger and her glasses were knocked off. While the outward signs of injury may not appear to be very significant, it is possible for significant internal injuries to be present.

Mrs. Bonsall is in her sixties and the blow to her head was sufficient to knock off her glasses. In light of the public concern that has risen over head injuries, the postal authorities were not over zealous in having Bonsall get a medical check up. In addition, employers must take affirmative steps to protect themselves from possible future litigation.

**VI.        Conclusion**

This court finds that Defendant's behavior constituted disorderly conduct and the assessment for restitution is not inappropriate. An appropriate order will be issued.

s/Sylvia H. Rambo<br>United States District Judge

Dated: February 2, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:10-CR-320** |
| | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Smyser)** |
| | : | |
| **STEPHEN M. ULRICH** | : | |

# **O R D E R**

AND NOW, this 2nd day of February, 2011, **IT IS HEREBY ORDERED THAT** the November 4, 2010, judgment of conviction by the magistrate judge is **AFFIRMED**. The stay on the payment of restitution imposed by order dated December 1, 2010 is **LIFTED**. The Clerk of Court shall close this file.

s/Sylvia H. Rambo<br>
United States District Judge